**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
Duerring Law Offices
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEONARD SHAW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1210-CR-433 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1201-FC-24

**June 27, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Leonard Shaw appeals his sentence of three years for Class D felony counterfeiting. We affirm.

## Issue

The issue before us is whether Shaw's three-year sentence is inappropriate.

## Facts

On November 15, 2011, Marilyn Keldsen's purse, which contained a checkbook and other personal items, was stolen at a Wal-mart. She filed a police report and subsequently closed her accounts. On January 26, 2012, Shaw attempted to cash one of the stolen checks in the amount of $300 at Community Wide Federal Credit Union ("Community Wide") in St. Joseph County. The check was written to Shaw from an account that belonged to Marilyn and Lloyd Keldsen. Andrea Fields, the teller who assisted Shaw, noticed that the check was over the limit based on a code system used by the bank. She also noticed that it was the fourth check from the same account that he was attempting to cash in a short period of time. She notified her supervisor, and they subsequently contacted the police.

Upon arrival, Officer Kevin Gibbons questioned Shaw regarding the checks; Shaw told the officer that an individual named "Lee" had given him checks to cash in exchange for $25.00, but he was unable to give an exact address for "Lee." Tr. p. 136. During the court proceedings, Shaw contacted Marilyn and "asked her not to testify." Id. at 103. He

2

further told her that Marilyn's daughter gave him the check; however, Marilyn testified that she does not have a daughter.

The State charged Shaw with a Class C felony forgery and after trial, he was convicted of a lesser offense of Class D felony counterfeiting. The probation department found him at a moderate risk category to reoffend and recommended that he "serve two (2) years on community corrections . . . ." App. p. 45. However, the trial court sentenced Shaw to serve three years executed, minus the days credited for serving time during the proceedings. Tr. p. 241. Shaw now appeals his sentence.

**Analysis**

We assess whether Shaw's sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. See Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on r'hg 875 N.E.2d 218 (Ind. 2007). Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case."

3

Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Shaw first challenges his sentence as being excessive because of the nature of the offense. He argues that there was no loss when he attempted to cash the check at Community Wide because Marilyn had closed the account. He also states that Community Wide has a judgment against him in small claims court related to this incident. We are not persuaded by this argument. Shaw's intention was to defraud the Keldsens and Community Wide by withdrawing funds from an account that did not belong to him. After the proceedings began, Shaw contacted Marilyn to ask her not to testify at trial and told her that the checks were from her daughter for work that he had performed, to which Marilyn testified that she has no daughter. These actions show a disregard of the law, and an apparent willingness to attempt to "game" the criminal justice system.

4

Shaw next argues that imposing the maximum sentence was excessive in light of his character. He relies on the recommendation by the probation department, which indicated that his behavior is at an overall moderate risk to reoffend. Based on his risk assessment, the probation officer recommended that, instead of incarceration, Shaw serve in a community corrections program for two years. However, Shaw has an extensive criminal history. As we have explained:

> The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and number of prior offenses in relation to the current offense. A defendant's age also is highly relevant in determining the weight to be given to a defendant's criminal history or lack thereof.

Rutherford, 866 N.E.2d at 874 (emphasis added) (citations omitted).

Shaw has been convicted of three felonies, including the one on appeal, and forty-four misdemeanors during his lifetime. He is now forty-seven years old and has been in trouble with the law since he was a juvenile. He has consistently failed to change his conduct. For example, a ten-year sentence of incarceration was modified to "shock probation" for a burglary conviction in 1986. App. p. 25. During his probation, he continued to have run-ins with the law. We note that "the judge [is] not bound by [the presentence investigation report] recommendation." Lemond v. State, 878 N.E.2d 384, 394 (Ind. Ct. App. 2007) (quoting Jenkins v. State, 492 N.E.2d 666, 669 (Ind.1986)). The trial court found that "the best indicator of whether [he is] going to re-offend or not is [his] past." Tr. p. 240. As also noted by the trial court, "the only time [Shaw had not]

committed a crime in the past thirty years [was] when [he] was in custody." Id. at 241. Nothing has deterred Shaw from a life of crime. Shaw's criminal history reflects very poorly on his character.

## Conclusion

Even if we were to assume that the offense here was not egregious, we still find Shaw's sentence to be appropriate based on his extremely poor character. We affirm the trial court's decision.

Affirmed.

NAJAM, J., and BAILEY, J., concur.